***NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| JAMES BAKER, | : : : | Civil Action No. 13-3087 (SDW) |
| Plaintiff, | : : | |
| v. | : : | **OPINION** |
| DEPARTMENT OF CORRECTIONS, et al., | : : : : | |
| Defendants. | : : | September 8, 2015 |

**WIGENTON**, District Judge:

Presently before the Court is Defendants' motion for summary judgment. (ECF No. 41). Plaintiff, James Baker, filed a brief in opposition (ECF No. 42), to which Defendants replied. (ECF No. 43). For the following reasons, this Court will grant Defendants' motion for summary judgment as to Plaintiff's entire complaint.

**I. BACKGROUND**

Plaintiff, James Baker, is currently incarcerated at the South Woods State Prison following his 2011 and 2012 convictions, one of which included a charge for resisting arrest/eluding police. (Defendant's statement of material facts, Document 1 attached to ECF No. 41, hereafter "DSOMF," at ¶ 1; Plaintiff's statement of material facts, Document 1 attached to ECF No. 42, hereafter "PSOMF," at ¶ 1). Plaintiff had previously been incarcerated between 1987 and 2004 following several convictions including those for charges of sexual assault and robbery. (DSOMF at ¶ 2; PSOMF at ¶ 2). At the time of the events in question, Defendant was incarcerated at

Northern State Prison in Newark, New Jersey.  (DSOMF at ¶ 5-8; PSOMF at ¶ 5-8).  At that time, Defendant Ramona Burks was a social worker who worked at Northern State Prison, and Defendant Paul Lagana was the administrator of the prison.  (*Id.*).

On May 5, 2012, Plaintiff learned from his brother, Ernest Baker, that his mother had passed away.  (Exhibit B attached to ECF No 41, hereafter "Plaintiff's Dep.," at 37-38, DSOMF ¶ 9).  Two days later, Plaintiff spoke with Burks and requested that he be permitted to attend a private viewing.[1]  (Plaintiff's Dep. at 38-39).  During this meeting, Plaintiff was informed that if he was permitted to attend a viewing, his family would have to provide sufficient funds to cover the trip.  (*Id.* at 39, DSOMF at ¶ 12).  Plaintiff thereafter called his brother, who stated that he would put money into Plaintiff's account to provide for the costs of the furlough.  (Plaintiff's Dep. 41-42).  Baker also asked his brother to contact Lagana regarding his request.

Although Burks received Plaintiff's initial request for a funeral furlough, the parties agree that she did not take part in the decision as to the request as she is a social worker and does not have the authority to do so.  (DSOMF at ¶ 15; PSOMF at ¶ 15).  A few days after he made his request, Plaintiff confronted Burks regarding his request and whether he needed money in his account to attend a private viewing.  (DSOMF at ¶ 16; PSOMF at ¶ 16).  Plaintiff contends that she made a comment to another inmate that Baker lacked the funds to go to a private viewing.  (*Id.*).

---

[1] Defendants have provided a copy of a form requesting the funeral furlough purportedly signed by Defendant.  (Exhibit G attached to ECF No. 41).  Plaintiff, however, repeatedly asserts that he never signed such a form and that this form is a forgery created after the fact.  Plaintiff supports this assertion by providing a vaguely worded OPRA request that did not return the form in question.  As this Court need not determine whether the form is genuine to decide the issues raised in this motion, this dispute will not be addressed further.

On May 9, Plaintiff's brother called Lagana requesting more information regarding Plaintiff's request for a private viewing. (DSOMF at ¶ 18, PSOMF at ¶ 18). When Lagana called Ernest Baker back, he informed Baker that Plaintiff's request had been denied because Plaintiff had an eluding charge on his record and was therefore a flight risk.[2] (*Id.*). Plaintiff's mother's funeral was thereafter held on or about May 11. (DSOMF at ¶ 19; PSOMF at ¶ 19). Plaintiff testified at his deposition that although he was denied the opportunity for a private viewing before the funeral, he is aware of two other individuals, both of whom are of the same race as Plaintiff (African-American) who were permitted to go on funeral furloughs in spite of having eluding or bail jumping charges on their record. (DSOMF at ¶ 33-35, PSOMF at ¶ 33-35).

Other than the interactions recounted above, Plaintiff testified at his deposition that he has had no other interactions with Defendants, aside from seeing them at the prison. (DSOMF at ¶ 23-27; PSOMF at ¶ 23-27). Plaintiff does not know whether either Burks or Lagana knew of him prior to the events recounted above, however, because of his prior history in Northern State prison which occurred before Lagana became the prison administrator. (*Id.*). Indeed, Petitioner testified at his deposition that he could not say whether there was any reason Lagana would have known of him before his furlough request, and specifically stated that he had never spoken with Lagana prior to the denial. (Plaintiff's Dep. at 69).

Ultimately, Plaintiff asserts that he cannot say why his request for a funeral furlough was denied. (DSOMF at ¶ 28; PSOMF at ¶ 28). Plaintiff asserts, however, that regardless of the reason, the act was intentional and therefore must have been maliciously motivated. (DSOMF at

---

[2] During discovery, both Burks and Lagana instead asserted that Plaintiff's request had been denied because of his history of institutional infractions during his prior period of incarceration. (*See* Document 3 attached to ECF No. 42 at 7, 24-25).

3

¶ 30-32; PSOMF at ¶ 30-32). Plaintiff also claims, without providing any evidence to support the assertion other than the very fact that his request was denied, that the denial was specifically intended to cause him emotional harm. (DSOMF at ¶ 31; PSOMF at ¶ 31).

**II. DISCUSSION**

**A. Legal Standard**

Pursuant to Rule 56, a court should grant a motion for summary judgment where the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of "identifying those portions of the pleadings depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A factual dispute is material "if it bears on an essential element of the plaintiff's claim," and is genuine if "a reasonable jury could find in favor of the non-moving party." *Blunt v. Lower Merion School Dist.*, 767 F.3d 247, 265 (3d Cir. 2014). In deciding a motion for summary judgment a district court must "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion," *Id.*, but must not make credibility determinations or engage in any weighing of the evidence. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, [however,] there is no genuine issue for trial." *Matsuhita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Once the moving party has met this initial burden, the burden shifts to the non-moving

4

party who must provide evidence sufficient to establish that a reasonable jury could find in the non-moving party's favor to warrant the denial of a summary judgment motion. *Lawrence v. Nat'l Westminster Bank New Jersey*, 98 F.3d 61, 65 (3d Cir. 1996); *Serodio v. Rutgers*, 27 F. Supp. 3d 546, 550 (D.N.J. 2014). "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial. However, the party opposing the motion for summary judgment cannot rest on mere allegations, instead it must present actual evidence that creates a genuine issue as to a material fact for trial." *Serodio*, 27 F. Supp. 3d at 550.

### B. Analysis

Plaintiff's claims, all of which Defendants challenge through their summary judgment motion, arise out of alleged violations of Plaintiff's constitutional rights and are brought pursuant to 42 U.S.C. § 1983. "To establish a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a violation of a right protected by the Constitution or laws of the United States that was committed by a person acting under the color of state law." *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000); *see also Woodyard v. Cnty. of Essex*, 514 F. App'x 177, 180 (3d Cir. 2013) (the statute provides "private citizens with a means to redress violations of federal law committed by state [actors]"). "The first step in evaluating a section 1983 claim is to 'identify the exact contours of the underlying right said to have been violated' and to determine 'whether the plaintiff has alleged a deprivation of a constitutional right at all.'" *Nicini*, 212 F.3d at 806 (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n. 5 (1998)). Here, Plaintiff asserts claims against Defendants for alleged violations of his Fifth Amendment rights, Eighth Amendment right to be

5

free of cruel and unusual punishment, Fourteenth Amendment procedural and substantive Due Process rights, and Fourteenth Amendment Equal Protection rights arising out of the denial of his request for a furlough from prison to attend a private viewing prior to his mother's funeral.

**1. Plaintiff's Fifth Amendment Claims are not cognizable against Defendants and the Department of Corrections is not a person amenable to suit under § 1983**

Defendants argue and Plaintiff appears to concede (*see* ECF No. 42 at 5) that his Fifth Amendment claims do not apply to state actors and are thus not cognizable against Defendants, and that the Department of Corrections cannot be held liable under 42 U.S.C. § 1983. This Court agrees. *See Nguyen v. U.S. Cath. Conf.*, 719 F.2d 52, 54 (1983) ("the limitations of the fifth amendment restrict only federal government action"); *Thomas v. E. Orange Bd. Of Educ.*, 998 F. Supp. 2d 338, 351 (D.N.J. 2014) ("the Fifth Amendment restricts the actions of federal officials, not state actors . . . . [a p]laintiff cannot ground her Section 1983 claim in the Fifth Amendment.)*; see also Grabow v. S. State Corr. Facility*, 726 F. Supp. 537, 538-39 (D.N.J. 1989) (State department of corrections and state prison facilities are not "persons" under § 1983); *Brown v. New Jersey Dep't of Corr.*, No. 12-5069, 2014 WL 4978579, at *2 (D.N.J. Oct. 3, 2014). As such, Plaintiff's Fifth Amendment claims and claims against the New Jersey Department of Corrections must be dismissed with prejudice and judgment must be entered in Defendants favor as to those claims.

**2. Plaintiff's Fourteenth Amendment Due Process Claims**

Plaintiff also asserts claims pursuant to both the procedural and substantive aspects of the

6

Fourteenth Amendment's Due Process clause. "The Due Process Clause applies when government action deprives a person of liberty or property." *Greenholtz v. Inmates of Neb. Penal and Corr. Complex*, 442 U.S. 1, 7 (1979). Liberty interests protected by the clause may arise out of the Due Process Clause itself, or arise out of state laws. *See Sandin v. Conner*, 515 U.S. 483-84 (1995). The liberty interests created by the state in the prison context, however, "will be generally limited to freedom from restraint which . . . imposes atypical and significant hardships on the inmate in relation to the ordinary incidents of prison life." *Id*. at 484. The Due Process Clause, however, does not provide prisoners with a "liberty interest in attending a family member's funeral, and denial of such an opportunity does not impose an atypical or significant hardship on the inmate in relation to the normal incidents of prison life." *Ramziddin v. Plousis*, No. 07-5868, 2008 WL 906341, at * 4 (D.N.J. Apr. 1, 2008); *see also Griggs v. New Jersey*, No. 11-2673, 2011 WL 3739375, at * 4 (D.N.J. Aug. 24, 2011); *Mills v. Walker*, No. 05-1744, 2005 WL 2807171, at *5 (D.N.J. Oct. 25, 2005). Although New Jersey does permit funeral furloughs in limited circumstances, the decision of whether to grant furlough is entirely within the discretion of the chief executive officer of the prison in which an inmate is housed, and as such neither New Jersey law nor administrative regulations have created a liberty interest protected by the Due Process clause. *See Mills*, 2005 WL 280717 at *5; *see also* N.J. Stat. Ann. § 30:4-8.1 ("the chief executive of any penal or correctional facility . . . may in his discretion, and in conformity with the rules and regulations of the State . . . authorize and permit the attendance of a prisoner or inmate at the bedside or funeral of a dying or deceased relative"); N.J. Admin Code § 10A:18-7.2 (pursuant to the statute, "the correctional facility Administrator may, at his or her own discretion, authorize and permit the attendance of an inmate at the bedside of a dying relative, or at a private viewing, when

7

no relatives or friends are present, of a deceased relative").[3]   As Plaintiff lacks a protected liberty interest in his request to attend a viewing of his deceased mother, the procedural protections of the Due Process Clause do not apply and Defendants are entitled to judgment as a matter of law as to his procedural Due Process claim.

Plaintiff also seeks to make a substantive Due Process claim related to the denial of his request.   The Due Process Clause "does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm."  *County of Sacramento v. Lewis*, 523 U.S. 833, 848 (1998).   The "touchstone of due process is protection of the individual against arbitrary action of government."  *Id.* at 845 (quoting *Wolf v. McDonnell*, 418 U.S. 539, 558 (1974)).   "[W]here abusive action by a member of the executive branch is alleged, only the most egregious official conduct can be said to be arbitrary in a constitutional sense."  *Miller v. City of Philadelphia*, 174 F.3d 368, 375 (1999).   As such, a claim directed at executive action is only cognizable under the rubric of substantive due process where the behavior involved "is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience."  *Evans v. Sec'y Pa. Dep't of Corr.*, 645 F.3d 650, 660 (3d Cir. 2011) (quoting *Lewis*, 523 U.S. at 847 n. 8).

What amounts to conscience shocking is heavily dependent on the context of the alleged

---

[3] Although the New Jersey Administrative Code specifies certain circumstances under which an administrator "is not required" to permit a funeral visit, such as when the visit interferes with security or the operation of the jail, the inmate has demonstrated a poor adjustment to life in prison, the inmate is an escape risk, the inmate has a history of serious disciplinary guilty findings, the inmate is untrustworthy, the inmate is renown with the media and would cause unfavorable comment in the community were the visit to become public, and the location of the visit would place either a staff member or the inmate in danger, *see* N.J. Admin. Code § 10A:18-7.5, nothing in the code or statute indicates that the administrator's decision to deny a visit is not entirely discretionary where these factors are absent.

8

violation; what shocks the conscience in one situation may not in another. *Id.* Generally, conduct which is intended to injure is most likely to be able to rise to the level of conscience shocking, whereas negligently inflicted harm "is categorically beneath the threshold of constitutional due process and will never be conscience shocking." *Id.* Where deliberation is possible, such as in the prison setting where "forethought about an inmate's welfare is not only feasible but obligatory," at least deliberate indifference is required to establish that an action is conscience shocking. *See Lewis*, 523 U.S. at 851; *see also Nicini*, 212 F.3d at 811. "An official acts with deliberate indifference when he or she knows of and disregards a substantial risk of serious harm to inmate health or safety." *Parkell v. Merkell*, --- F. App'x ---, 2015 WL 4523521, at *3 (3d Cir. July 27, 2015) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Thus, deliberate indifference requires that an official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must draw that inference." *Farmer*, 511 U.S. at 837.

Even if this Court were to assume that Plaintiff's interest in attending his mother's funeral is sufficiently important to warrant protection under the substantive protections of the Due Process clause, his claim must fail because he cannot establish that the decision to deny his request "shocks the conscience." There is no evidence in the record to support the assertion that Defendant Lagana, who made the ultimate decision to deny Plaintiff's request, knew of or had any reason to know of Plaintiff specifically. Thus, the only harm to Plaintiff of which Lagana could have been aware before denying the request would have been the general sort of emotional harm which arises from the death of a loved one, albeit somewhat exacerbated by the unfortunate inability to say goodbye in person. This type of emotional harm, which is essentially the harm Plaintiff claims to

9

have suffered, would be present in virtually every case wherein a prison official is called upon to decide whether to permit a funeral furlough under New Jersey law.   To find a decision conscience shocking because such harm resulted would render the substantive aspect of the Due Process Clause the sort of unfettered body of tort law which the Court decried in *Lewis*.   523 U.S. at 848.   While the emotional harm suffered by Defendant is understandable, it is not the sort of "serious harm" which would support a finding that Lagana was deliberately indifferent.[4]   Thus, even were Plaintiff's claim based upon the sort of fundamental interest which would support a substantive due process claim, because Lagana's behavior cannot be said to be conscience shocking, Plaintiff's substantive due process claim must fail and entry of judgment in Defendants' favor on that claim is warranted.

### 3.  Plaintiff's Equal Protection Claim

Plaintiff also asserts that the decision not to permit him a furlough violates the Equal Protection Clause of the Fourteenth Amendment in so much as similarly situated individuals at the prison were permitted such furloughs.   Plaintiff does not argue that he was treated differently on the account of his race,[5] but instead that he was treated differently for some unknown reason.   Plaintiff does not challenge the statute or administrative regulation permitting furloughs for funerals themselves, but rather their application to him by Defendants, particularly Lagana.

---

[4] This Court also notes that delineating the harm which resulted from the death of Plaintiff's mother from the harm which resulted from being unable to attend the funeral would be a trying task indeed.   Much of the harm that Lagana could have been aware of – the general harm one suffers from loss of a loved one – would likely result more from the former than the latter.
[5] Indeed, Plaintiff admitted during his deposition that these other individuals were of the same race as he, African American.   (Exhibit B attached to ECF No. 41 at 79).   Plaintiff identifies no other suspect class to which he may belong.

"[T]he purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Little v. Terhune*, 200 F. Supp. 2d 445, 449 (D.N.J. 2002) (quoting *Vill. Of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). Thus, the "unlawful administration by state officers of a state statute or regulation, resulting in its unequal application to those who are entitled to be treated alike, can deny equal protection if intentional or purposeful discrimination caused the disparity in treatment." *Id.* at 450.

Where a plaintiff fails to identify a suspect class to which he belongs or show that Defendants violated a fundamental right, his claim must be brought pursuant to a "class of one" theory. *Id.*; *see also Olech*, 528 U.S. at 564; *Renchenski v. Williams*, 622 F.3d 315, 337 (3d Cir. 2010) (equal protection claim couched on non-legislative action will survive summary judgment only if the plaintiff shows he was treated differently because he was "a member of a suspect class or because he exercised a fundamental right" or where plaintiff makes out a viable class of one claim); *Overly v. Garman*, 599 F. App'x 42, 43 (3d Cir. 2015) ("the Equal Protection Clause is ordinarily applied to claims of class-based discrimination," where no suspect class or fundamental right is alleged a challenge to non-legislative action must arise out of a class of one theory); *Danihel v. Office of President of United States*, --- F. App'x ---, ---, 2015 WL 3561405, at *1 (3d Cir. June 9, 2015) (because the petitioner "has not claimed to be a member of a protected class, his claim must be premised on a 'class-of-one' theory"). To state a claim under such a theory, a plaintiff must show that "(1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in

11

treatment." *Overly*, 599 F. App'x at 43 (quoting *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006)). At first blush, it would appear that Plaintiff has provided sufficient facts to support a class of one theory of liability in so much as he testified in his deposition that he was treated differently from others who had similar eluding or bail jumping convictions on their record, that defendants acted intentionally in treating him differently, and that the rational basis for the difference is questionable in light of the varying reasons offered for the denial at various times.

Unfortunately for Plaintiff, the action he is challenging is, under the statute, entirely discretionary. As noted above, both the statute and the regulations involved in this case offer the administrator of the prison, in this case Lagana, discretion in deciding whether to grant a furlough. N.J. Stat. Ann. § 30:4-8.1; N.J. Admin Code § 10A:18-7.2-7.5. Although the regulations do provide that in certain situations the administrator need not permit a furlough, *see* N.J. Admin Code § 10A:18-7.5, nothing in the statute or regulations states that these are the only situations under which the administrator can deny furlough. Indeed, the only limitation the regulations explicitly put on the administrator in exercising his discretion is found in N.J. Admin Code § 10A:18-7.8(b) which states that no inmate shall be denied approval for a visit because of his inability to pay for the trip in light of the regulation's requirement that the inmate and his family reimburse the prison for the expenses incurred.[6] Thus, beyond this one limitation, the administrator appears to have complete discretion in choosing whether to approve or deny a furlough request for a family member's funeral. Even those factors on which guidance is given

---

[6] Although Plaintiff does assert that he was told by Defendant Burks that his inability to pay was at least part of the reason for the denial, Burks was not the decisionmaker, and there is no evidence that Lagana, the actual decisionmaker, ever offered such as the reason for his denial of a funeral furlough.

12

(those situations in which an administrator is not required to grant a furlough) show that the decision of whether to grant furlough requires a subjective and individualized evaluation to determine whether furlough is appropriate.  *See* N.J. Admin Code § 10A:18-7.5.

In *Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591, 602-604 (2008), the Supreme Court explained why a class of one theory of liability is not available where an individual challenges a discretionary act:

> What seems to have been significant in [the cases recognizing and upholding the class of one theory of liability] was the existence of a clear standard against which departures, even for a single plaintiff, could be readily assessed.  There was no indication in *Olech* that the zoning board was exercising discretionary authority based on subjective, individualized determinations – at least not with regard to easement length, however typical such determinations may be as a general zoning matter.  Rather, the complaint alleged that the board consistently required only a 15-foot easement, but subjected Olech to a 33-foot easement.  This differential treatment raised a concern of arbitrary classification, and we therefore required the State to provide a rational basis for it.
>
> In [*Allegheny Pittsburg Coal Co. v. Commission of Webster Cnty.*, 488 U.S. 336 (1989)], cited by the *Olech* Court, the applicable standard was market value, but the county departed from that standard in basing some assessments on quite dated purchase prices.  Again, there was no suggestion that the "dramatic differences in valuation" for similar property parcels were based on subjective considerations of the sort on which appraisers often rely.  [*Sioux City Bridge Co. v. Dakota County*, 260 U.S 441 (1923),] also cited in *Olech*, was the same sort of case, recognizing an equal protection claim when one taxpayer's property was assessed at 100 percent of its value, while all other property was assessed at 55 percent, without regard to articulated differences in the properties.
>
> There are some forms of state action, however, which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments.  In such cases the rule that people should be "treated alike, under like circumstances and conditions" is not violated when one person is treated differently

13

> from others, because treating like individuals differently is an accepted consequence of the discretion granted. In such situations, allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise.

Based on this reasoning, the Court ultimately concluded that class of one theories of liability are not applicable in highly discretionary decisions, such as in the public employment context. *Id.* at 604-05 (treating employees differently "is not to classify them in a way that raises equal protection concerns[, r]ather, it is simply to exercise the broad discretion that typically characterizes the employer-employee relationship."). The Third Circuit has in turn applied this rule to other arenas in which the state action involved was "solely within the discretion" of the official who took that action. *See, e.g., Slavoski v. Pawloski*, 462 F. App'x 215, 218 (3d Cir. 2012); *Perry v. Pennsylvania Dep't of Corr.*, 441 F. App'x 833, 838 (3d Cir. 2011) (in the context of prison employees making recommendations to a state parole board). As Plaintiff is challenging a discretionary decision where a subjective and individualized determination was required, Lagana's refusal to permit him a furlough to attend a private viewing, that decision may not be challenged under a class-of-one theory of liability. *Engquist*, 553 U.S. at 602-05; *Perry*, 441 F. App'x at 838. Plaintiff's class of one equal protection claim must therefore fail. As Plaintiff has failed to identify any suspect classification or fundamental right which was impugned by the decision, he has failed to otherwise make out an equal protection claim. Defendants are therefore entitled to judgment as a matter of law as to Plaintiff's equal protection claims.

**4. Plaintiff's Eighth Amendment Claim**

Plaintiff also brings a claim under the Eighth Amendment alleging that the denial of his

14

furlough request amounts to cruel and unusual punishment. As under the Fourteenth Amendment, the denial of a prisoner's request "to attend a family funeral does not in and of itself violate the Constitution." *Gardner v. Lanigan*, No. 13-7064, 2013 WL 6669230, at *3 (D.N.J. Dec. 18, 2013). Although several courts have assumed without deciding that it is possible that the denial of a funeral furlough could support an Eighth Amendment claim, those courts have specifically limited that statement by noting that liability could only arise "if the granting of such leave were customary and prison officials denied it on a particular occasion or to a particular prisoner *in order to cause psychological distress*, or with *deliberate indifference to his mental health*." *See Thomas v. Farley*, 31 F.3d 557, 559 (7th Cir. 1994) (emphasis added); *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999); *Butler v. Snyder*, 106 F. Supp. 2d 589, 592 (D. Del. 2000). As discussed above in the context of Plaintiff's substantive due process claim, Plaintiff has produced no evidence which would support even a finding of deliberate indifference, let alone that Defendants acted in order to cause psychological distress, even were one to assume that funeral leave is "customary." As such, Defendants are entitled to judgment as a matter of law as to Plaintiff's Eighth Amendment claim as the denial of his funeral request did not constitute cruel and unusual punishment in violation of the Eighth Amendment, even if one assumes the Seventh and Second Circuits are correct in surmising that such a denial could theoretically violate the Constitution. Because Defendants are entitled to summary judgment as to all of Plaintiff's substantive claims, this Court need not, and will not, address the parties' arguments as to qualified immunity and punitive damages.

### III. CONCLUSION

For the reasons stated above, this Court will grant Defendants' summary judgment motion and will enter judgment in favor of Defendants as to all of Plaintiff's claims.   An appropriate order follows.

                                                s/ *Susan D. Wigenton*  
                                                **SUSAN D. WIGENTON**  
                                                **UNITED STATES DISTRICT JUDGE**